# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEXOS MEDIA IP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-1317-LPS-CJB |
| ) | |
| JOS. A. BANK CLOTHIERS, INC., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

1. In this patent infringement action filed by Plaintiff Lexos Media IP, LLC ("Plaintiff"), Defendant Jos. A. Bank Clothiers, Inc. ("Defendant") has filed a motion to dismiss the operative First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 16) More specifically, Defendant moves to dismiss Plaintiff's infringement allegations relating to the two patents-in-suit, United States Patent Nos. 5,995,102 ("the '102 patent") and 6,118,449 ("the '449 patent"), on the ground that Plaintiff failed to sufficiently allege in the FAC that Plaintiff complied with the marking statute, 35 U.S.C. § 287 ("Section 287"), at any point during the damages period. (D.I. 17 at 1)[1] The instant Motion has been referred to the Court for resolution by Chief Judge Leonard P. Stark. (D.I. 6)

2. The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second,

---

[1] Both patents-in-suit expired on June 25, 2017, before this lawsuit was filed on September 15, 2017. (D.I. 1; D.I. 17 at 1) Plaintiff does not assert that Defendant had actual notice of the patents during the damages period. (D.I. 17 at 4)

the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

3. Pursuant to Section 287, "[a] patent owner who fails to mark its [patented] products, or fails to require its licensees to mark [such] products, cannot recover damages relating to infringement occurring prior to the date that the alleged infringer receives actual notice of the alleged infringement." *In re Mobile Telecomms. Techs., LLC*, Case No. 16-md-02722-LPS-CJB, 2017 WL 1053099, at *3 (D. Del. Mar. 20, 2017); *see also* 35 U.S.C. § 287(a); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). The United States Court of Appeals for the Federal Circuit has interpreted the marking statute to allow a patentee to recover damages from the earlier of the time when it began marking products in compliance with Section 287(a) and the time when the patentee gave the alleged infringer actual notice of its alleged infringement. *In re Mobile Telecomms. Techs., LLC*, 2017 WL 1053099, at *3. The patentee bears the burden of pleading and proving that he complied with

Section 287's marking requirement. *Arctic Cat Inc.*, 876 F.3d at 1366.[2]

4. Plaintiff does make an allegation about marking in the FAC. In paragraph 11, it asserts that another entity, Lexos Media, Inc., "marked its website that used the technology claimed in the '102 and '449 patents"; thereafter, Plaintiff includes a screen shot of Lexos Media Inc.'s website. (D.I. 12 at ¶ 11) That screen shot, which was captured in January 2016 and bears a copyright notice dating from 2015, promotes Lexos Media, Inc's Cursor Marketing and AdBull products. (*Id.*) The screen shot also includes a statement from Lexos Media Inc.'s website stating that both the Cursor Marketing and AdBull products are covered by certain patents, including the two patents-in-suit. (*Id.*)[3] Defendant, however, claims that Plaintiff's pleading efforts regarding marking are nevertheless deficient, for two reasons.

5. First, Defendant asserts that Plaintiff has failed to sufficiently plead its compliance with the marking statute because Plaintiff does not allege that *other* of its licensees (i.e., those other that Lexos Media, Inc.) complied with Section 287 (nor does Plaintiff allege that it made any effort to ensure such licensees' compliance) during the damages period. *Arctic Cat Inc.*, 876 F.3d at 1366 ("A patentee's licensees must also comply with [Section] 287, because the

---

[2] In the FAC, Plaintiff alleges infringement of at least claims 71-73 of the '102 patent and at least claims 1 and 53 of the '449 patent. (D.I. 12 at ¶¶ 17, 21) Some of these asserted claims are system claims and some are method claims. Although the marking requirement does not apply where the patent claims are directed to a process or a method, if a patent contains both apparatus and method claims (as here), the marking requirement applies to all the claims. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012).

[3] Plaintiff notes that, for its part, it has not and does not practice the inventions claimed in the patent-in-suit; Plaintiff emphasizes that it and Lexos Media, Inc. are different entities. (D.I. 19 at 2) The Court infers herein that Lexos Media, Inc. was a licensee to the patents-in-suit whose failure to mark could have an impact on Plaintiff's ability to obtain certain damages in this case. (*Id.*; D.I. 21 at 2-3)

3

statute extends to 'persons making or selling any patented article for or under [the patentee].'") (quoting 35 U.S.C. § 287(a)); *id.* (noting that because a patentee may have difficulty in ensuring his third-party licensee's compliance with the marking provisions, courts may instead consider whether the patentee made *reasonable efforts* to ensure his licensee's compliance). In support of the notion that Plaintiff has, in fact, licensed the patents-in-suit to such other entities, Defendant cites to a June 27, 2017 notice letter that Plaintiff's counsel sent to Defendant's counsel. (D.I. 17 at 5-6) That letter, in turn, makes reference to "numerous Fortune 500 companies that have taken licenses" to three of Plaintiff's patents (the two patents-in-suit and one other patent). (D.I. 17 at 6)[4] Defendant notes that the FAC is silent as to whether any of these unnamed licensees have ever complied with Section 287's marking requirement, or as to Plaintiff's efforts to reasonably ensure that they did. And Defendant is correct; the FAC does not make mention of any such licensees.

6. However, in its answering brief Plaintiff responds that if an accused infringer like Defendant challenges the patentee's compliance with Section 287, then it is Defendant who bears the initial burden of production to "put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Arctic Cat Inc.*, 876 F.3d at 1368. Plaintiff notes that, as of the time the FAC's filing, Defendant had not yet identified what licensees were at issue, or which "specific unmarked products" those licensees sold that Defendant believes read on the patents-in-suit. (D.I. 19 at 1, 6) Thus, according to Plaintiff, it is not required to address any such unnamed licensees' unnamed

---

[4] Defendant attached this letter as an exhibit to its answering brief. (D.I. 17, ex. A) But the letter is also referenced in the FAC, (D.I. 12 at ¶ 3), and so its contents may properly be considered here. *In re Burlington Coat Factor Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

4

products in the FAC, since Defendant had not yet met its burden of production on this front. (*Id.*) This seems right to the Court. After all, if certain products are not yet rightly a part of the case (because Defendant had not yet met its burden of production to specifically identify them), it stands to reason that Plaintiff would not have had to plead facts relating to those products. And it is telling that, in its reply brief, Defendant did not really address Plaintiff's responsive argument head-on. (D.I. 21 at 3) Thus, the Court does not find this first asserted deficiency to be a basis on which it can grant Defendant's Motion.[5]

7. Second, Defendant claims that paragraph 11's allegations about *Lexos Media Inc.*'s marking efforts regarding the Cursor Marketing and AdBull products are insufficient. (D.I. 17 at 6-8) Defendant's argument in this regard goes as follows: (1) the alleged invention in the patents-in-suit involves displaying an image in place of a cursor when a user visits a website (e.g., modifying a cursor to take the form of a soda bottle when an advertisement for that soda appears in a banner advertisement); (2) the Cursor Marketing and AdBull products appear to provide Lexos Media Inc.'s customers with the ability to use "Cursor Marketing and/or AdBull to display advertisements or advertising-related material" in place of a cursor when users visit that customer's website; and, in such a circumstance, (3) since Lexos Media, Inc. "practices the alleged invention through individual websites that use Cursor Marketing and/or AdBull to

---

[5] Even if it were clear from the relevant materials that Plaintiff's licensees sold certain specifically-identified products, Plaintiff nevertheless appears to contest whether any such licensee's products do, in fact, read on the patents-in-suit. (D.I. 19 at 6 (Plaintiff asserting that "[w]hether Plaintiff's licensees are obligated to mark is an open question of fact. There has been no adjudication that any of the licensees practice the patents-in-suit; indeed, the licensees denied liability under the patents-in-suit.")) The Court does not understand how, in that scenario, it could (as Defendant seems to want it to do): (1) resolve any such fact dispute in Defendant's favor; (2) find that such products *do* implicate the marking requirement; and (3) dismiss the case for failure of Plaintiff to plead facts regarding those licensees' compliance with Section 287(a).

5

display advertisements or advertising-related material[,]" Section 287(a) requires [Lexos Media, Inc.] to mark those websites with patent numbers." (*Id.* at 7-8)

8. It is not always clear in circumstances like these whether a website must be marked by a patentee. But some district courts have held that "a patentee must mark a website either where the website is somehow intrinsic to the patented device or where the customer downloads patented software from the website." *Limelight Networks, Inc. v. XO Commc'ns, LLC*, 241 F. Supp. 3d 599, 608 (E.D. Va. 2017); *see also IMX, Inc. v. Lendingtree, LLC*, No. Civ. 03-1067-SLR, 2005 WL 3465555, at *3-5 (D. Del. Dec. 14, 2005). It appears from the FAC that the Cursor Marketing and AdBull products are software products, and there is legal support for the proposition that software can be subject to the marking requirement of Section 287(a). *United Video Props., Inc. v. Haier Grp. Corp.*, Civil Action No. 11-1140 (KAJ), 2014 WL 12774922, at *39 (D. Del. May 16, 2014). And it also appears that Lexos Media, Inc. maintained separate websites devoted to those individual Cursor Marketing and AdBull products. (D.I. 19 at 4-5)[6] But it is not clear from the FAC that: (1) the Cursor Marketing or AdBull websites were intrinsic to the patented software products, nor (2) that Lexos Media, Inc.'s customers were or are able to download the software from either of those two websites. It is certainly plausible that neither of these things were or are true. And in that circumstance, it seems as if it could have been acceptable notice under Section 287(a) for Lexos Media, Inc. to have simply marked its own website—a website that is alleged to have "used the technology claimed in the" two patents-in-suit—so as to provide sufficient notice of the patented nature of the software products at issue.

---

[6] Plaintiff attaches to its answering brief printouts from those websites. These printouts, however, are not documents that the Court can consider in resolving a motion to dismiss, since they are not attached to, integral to, or referenced in the FAC. (D.I. 20, exs. A-B)

6

(D.I. 12 at ¶ 11) As such, the allegations in the FAC plausibly demonstrate Lexos Media Inc.'s compliance with the marking statute, such that dismissal on this ground is not warranted, either.

9. For the foregoing reasons, the Court recommends that the Motion be DENIED.

10. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: June 5, 2018

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE